Ford, Ex'r, etc. vs. Ford and others.

Ford, Executor, etc., Respondent, vs. Ford, Appellant, and others, Respondents.

| 72 | 621 |
| 102 | 669 |

*October 17 — November 8, 1888.*

*Wills: Validity: Interpretation: Conflict of laws: Equitable conversion: Perpetuities: Judgment.*

The judgment of the trial court, entered in accordance with the mandate of this court on the former appeal, undertakes in a recital to state what the laws of Missouri, Kansas, and Michigan are as to perpetuities; but it expressly disclaims jurisdiction to determine such laws as applicable to the will in question.  It also states, in construing the language of the will, that such language works an equitable conversion of the lands in Kansas and Michigan into lands in Missouri; but the context shows this to be a mere statement of what the testator *intended* by the language used.   It also adjudges that the legality of such equitable conversion is dependent upon the right to invest the proceeds of such lands in Kansas and Michigan in lands in Missouri and to hold the latter as directed in the will, " and that whether such investing and holding would be lawful or unlawful is to be determined by the law of

the state where the investing is to be made and the title held;"
and it disclaims jurisdiction to determine the title to any lands
outside of the state of Wisconsin, or the validity of the proposed
conversion of lands in other states into lands in Missouri, and
directs that the executor "proceed and execute the will and the
trust created thereby, in all respects in conformity with this judg-
ment, and the judgment, decision, and opinion of the supreme
court in the premises." *Held*, that there was no substantial error
in the judgment, and that it does not invade the province of the
courts of Kansas, Michigan, or Missouri.

APPEAL from the Circuit Court for *Dane* County.

The following statement of the case was prepared by
Mr. Justice CASSODAY:

This action is for the construction of the will of Francis
F. Ford, deceased, found in 70 Wis. 22–25. The original
judgment, among other things, construed the instrument,
and in effect held that it was a valid will in all its parts,
and not within the provisions of the statutes of this state
against perpetuities or the suspension of the power of alien-
ation; and that the will invested the executor with power
and authority to convert the personal property and the
lands in Kansas, Michigan, and Wisconsin into real estate in
Kansas City, Missouri. That judgment was reversed by
this court on each of the four appeals therefrom, and the
cause was remanded with directions to enter judgment in
accordance with and to the extent indicated in the opinion
of this court upon such appeals (70 Wis. 44–69), "but leav-
ing open for further action the questions as to the validity
of such conversions, suspensions, and accumulations, until
authoritatively determined by the rightful jurisdiction."
70 Wis. 69. In pursuance of that mandate, judgment was
entered in the circuit court, August 13, 1888, from portions
of which the minor son, *Marcus C. Ford,* appeals.

For the appellant there was a brief by *Pinney & Sanborn,*
and oral argument by *S. U. Pinney.* They contended,
*inter alia,* that the judgment determines, in advance of any

action of the courts of those states, what operation and effect the will has on the lands of the testator in Michigan and Kansas. There is a clear distinction between ascertaining the *meaning* of the language of a will and the *effect or operation* of it. The former is to be ascertained by the court of the domicile of the testator; but the *lex rei sitæ* governs in respect to the construction of the will so far as the character and extent of the estates created by it are concerned. See Wharton on Confl. of Laws, sec. 597; 1 Redf. on Wills, 398; 1 Jarman on Wills, 1; *McCartney v. Osburn*, 118 Ill. 403; *Richards v. Miller*, 62 id. 417; *Kerr v. White*, 52 Ga. 362; *Mechanics' & T. Bank v. Harrison*, 68 id. 463; *Applegate v. Smith*, 31 Mo. 166; *Cabanne v. Skinker*, 56 id. 357; *White v. Howard*, 46 N. Y. 144; *Knox v. Jones*, 47 id. 389; *Jennings v. Jennings*, 21 Ohio St. 56; *Wills v. Cowper*, 2 Ohio, 312; *Myers v. Reed*, 17 Fed. Rep. 401; *McCormick v. Sullivant*, 10 Wheat. 192; *McGoon v. Scales*, 9 Wall. 27; *Watkins v. Holman*, 16 Pet. 25; *Brine v. Insurance Co.* 96 U. S. 635; *Jackson v. Chew*, 12 Wheat. 162; *Williamson v. Suydam*, 6 Wall. 738; *Norris v. Harris*, 15 Cal. 226; *Bingham's Appeal*, 64 Pa. St. 345; *Sewall v. Wilmer*, 132 Mass. 131.

*I. C. Sloan* and *J. M. Olin*, for the respondent *Joseph C. Ford*, the executor.

For the respondents *The Trustees of Hamilton College* there was a brief by *Gregory, Bird & Gregory*, and oral argument by *Charles N. Gregory*.

CASSODAY, J.   It is claimed that the portions of the judgment appealed from are either repugnant to other portions or not in conformity with the opinion of this court on the former appeal. There seem to be some grounds for such contention, although they may not be sufficiently serious or of such a character as to work a reversal. The recitals in the judgment, as a part of the original findings and upon

which the original judgment was based, undertake to state what the laws of Missouri, Kansas, and Michigan are, respectively, as to the postponement and the suspension of the power of alienation therein permitted; whereas this court expressly disclaimed jurisdiction to determine such laws as applicable to this will, even as to the personal property, much more as to the lands located in any of those states. But the immateriality of such recitals of law is made apparent by a similar disclaimer in the same judgment.

"It is further adjudged that the language found in subdivision 4 of said will [see 70 Wis. 22] . . . must be construed in connection with the language found in said Schedule A [70 Wis. 25, 26], and the court adjudges that, so construed, said testator intended from the language used that all of the property named in Schedule A, except the homestead, should be sold by the executor, and the proceeds of said sale be invested in real estate in Kansas City, Missouri, and to be held and administered in that city as a part of the estate during the time and for the purposes indicated in the will, and according to the provision of said will; that is, *that the language so used works an equitable conversion of the lands in said states of Kansas and Michigan into lands in Kansas City, Missouri;* but the court holds and adjudges that the legality of such equitable conversion is necessarily dependent upon the right to so invest and so hold, and that whether such investing and holding would be lawful or unlawful is to be determined by the law of the state where the investing is to be made and the title held; and no attempt is hereby made to determine the validity of the title to any lands outside of Wisconsin, nor the validity of any investment or trust in or tenure of such lands, but merely to ascertain the meaning and intent of the testator from the language employed in the will." The words in italics, standing alone, would be an attempt to adjudicate upon matters which this court repeatedly disclaimed any purpose of de-

termining, and hence remitted the same to other rightful jurisdictions. 70 Wis. 44 (1), 50–51 (*d*), 62–69 (8). By a careful reading of the passage quoted it will be observed that the words in italics are inserted as a mere paraphrase of the words which precede them, which merely declare what the "testator *intended* from the language used." The words in italics, therefore, must be regarded merely as another way of stating what the "testator *intended*" by the use of the language employed. Besides, they are immediately followed by other words, which expressly declare that no attempt is thereby "made to determine the validity of the title to any lands outside of Wisconsin, nor the validity of any investment or trust in or tenure of such lands, but merely to ascertain the *meaning and intent* of the testator from the language employed in the will."

True, the passage quoted contains this clause, to wit, "that whether such investing and holding would be lawful or unlawful is to be determined by the law of the state where the investing is to be made and the title held." The learned counsel for the appellant complains, in effect, that this language remits to the laws and courts of Missouri the whole question of the legality of such "investing" in Missouri lands and then holding the same during the time indicated in the will, "without reference to the laws of Kansas or Michigan, where the lands in question are situated." Substantially the same question confronted this court upon the former appeal in respect to the personal property. The same counsel had contended with much force and plausibility, as intimated in the opinion, that the whole scheme of the will for converting the personal property into lands in Missouri, and the lands in Michigan and Kansas into lands in Missouri, there to be held in trust for the time and in the manner contemplated in the will, was in contravention and fraud of the laws of this state. After declaring that such proposed conversion of the personal property in no way

contravened the laws of this state, the opinion of this court contains the following: "In other words, since the right to so convert [the personal property] *is dependent upon the right to so invest and hold*, the legality of such equitable conversion is dependent upon the same right to so invest and hold." 70 Wis. 50. "The difficulty of holding that the laws and courts of this state may interdict the conversion of personal property into lands in Missouri, or lands in Michigan or Kansas into lands in Kansas City, is apparent when we remember that the laws of this state have no extra-territorial force, and the courts of Wisconsin have no extra-state jurisdiction. . . . We must therefore disclaim jurisdiction to determine the title to any lands outside of Wisconsin, or the legality of accumulations of rents and profits therefrom. It follows that the *validity* of the proposed conversion of *personal property* into lands in Kansas City *must be determined by the laws and courts of Missouri*. So the question of the validity of the proposed conversion of lands in other states into lands in the same city would seem to be determinable by the same jurisdiction, but of this we have no authority to decide." 70 Wis. 68.

What was thus said respecting the proposed conversion of lands in other states was called out by the nature of the controversy and the fact, apparent to any one, that, should the courts of Michigan or Kansas determine the will to be valid respecting the lands therein situated and the proposed conversion of such lands into lands in Missouri not in contravention of their own laws, still such courts would be confronted with substantially the same question that confronted us respecting such personal property, to wit, whether the proceeds of such property could be legally invested in lands in Missouri and held in trust during the time and in the manner contemplated in the will,— a question which we felt bound to remit for determination to the laws and courts of Missouri, and directed the judgment to be held open to

await such determination. Of course, should the Missouri courts finally decide adversely to the legality of such investment and holding, then such proposed conversion of the personal property could not be legally made, and the same would remain under the jurisdiction of the courts of the testator's domicile. A similar result would seem to follow such adverse decision respecting the proposed conversion of lands in such other states — hence the incidental remark in the above quotation. On the other hand, should the courts of Michigan or Kansas hold the will, or the proposed conversion of the lands therein situated, to be invalid, then they would pass out from under the operation of the will, and never become subject to the trust. The questions presented on the former appeal were necessarily many-sided, and much of the opinion is devoted to disclaimers of the right to determine certain questions, and the reasons and authorities in support of such disclaimers. By confining the language of the several parts of the opinion to the respective questions under discussion, the opinion will not only be found in harmony with itself, but it will appear therefrom that an especial effort was made by this court to conform strictly to what was regarded as judicial interstate comity, and in no particular to invade the appropriate province of the courts of Michigan, Kansas, or Missouri, for each of which we have very great respect, and the opinions of which we frequently cite and follow.

But, to return to the portion of the judgment quoted, we are forced to conclude that it contains no substantial error. Especially is this so in view of other portions of the judgment, which are as follows: "And it is further adjudged that the court disclaims jurisdiction to determine, and does not determine, the title to any lands outside of the state of Wisconsin, nor the validity of the proposed conversion of lands in other states into lands in Kansas City, Missouri.

It is further adjudged that the executor, the plaintiff herein, is hereby directed to proceed and execute the said will and the trust created thereby, in all respects in conformity with this judgment *and the judgment, decision, and opinion of said supreme court in the premises.*" This last clause must be regarded, not only as confirmatory of the opinion of this court, but as "leaving open for further action the questions as to the validity of such conversions, suspensions, and accumulations, until authoritatively determined by the rightful jurisdiction," as required by the mandate of this court on the former appeal. In order to pass intelligently upon the questions presented relative to the personal property and the lands in this state, it became necessary upon the former appeal to construe the will as a whole in order to discover the nature, extent, and duration of the trust imposed. This was done. 70 Wis. 46–48 (5), 49–50 (6c), 51–53 (e), 53–62 (7). Such construction is followed in the opinion by a disclaimer of authority to determine the legality of such trust (except as to the lands in Wisconsin), and the other matters left open in the opinion, as above indicated. 70 Wis. 62–69. What is said in the judgment here appealed from in respect to the nature, extent, and duration of such trust, and the respective rights of the several beneficiaries thereunder, must be regarded as held open and subject to determinations by the rightful jurisdictions, as indicated in that opinion. In fact the judgment is mostly provisional, and does leave open the validity of such trusts, conversions, suspensions, and accumulations until authoritatively determined by the rightful jurisdictions. This appears from what has already been quoted therefrom, and other passages which might be quoted.

There appears to be no material error in the record. We do not feel disposed to change or modify the directions as to costs made on the former appeal. But this is not to

be construed as authorizing any additional allowance by reason of this appeal.

*By the Court.*— The judgment of the circuit court is affirmed.   The taxable costs in this court of the appellant (as well as the executor) are payable out of the estate.